**TMG TRUCK SERVICE, Inc., Appellant,**

v.

**Leroy PETTY, Appellee.**

**No. 15385.**

Court of Civil Appeals of Texas.

Dallas.

April 4, 1958.

Rehearing Denied May 9, 1958.

J. T. Barfield, Dallas, for appellant.

Ross H. Scott, Dallas, for appellee.

CRAMER, Justice.

This action was filed by appellee Petty against TMG Truck Service, Inc., hereafter called TMG, to recover $2,722.22 plus interest, costs, etc., for damages to a Diesel motor he alleges he sustained by reason of acts of TMG. TMG in addition to operating an oil and gas station specialized in servicing Diesel powered trucks. About March 7, 1954 Petty left his Diesel truck

tractor with TMG to be serviced by washing, greasing, lubricating, etc., and for an oil change in the motor and crank case. When Petty returned for his truck tractor TMG's agent told him the motor would not run because one of the employees had drained the crank case and started the motor without refilling the crank case with oil which resulted in the damage involved here. Petty alleged the failure to refill the crank case with oil was negligence, proximately caused the damage, it being in good condition when tendered to TMG. The estimated cost of repair was $175.20, parts $2,547.02, a total of $2,722.22. TMG answered by special exceptions and general denial. After trial on the merits at the conclusion of the evidence TMG filed a motion for instructed verdict on the ground that it, through its President, had by written agreement admitted liability in an instrument as follows:

"March 8, 1954.

"Trinity Motor Truck Company
"1900 South Ervay St.
"Dallas 1, Texas.

"Gentlemen:

"I, Roy E. Green, President of the TMG Truck Service, Inc., 920 South Industrial, Dallas, Texas, agree to pay Leroy Petty and Trinity Motor Truck Company the cost of repairing the diesel engine on GMC Model 1950 HDCR–752, Serial No. 136, Motor No. LA 7128, belonging to Leroy Petty, as a result of damages caused while under the responsibility of TMG Truck Service, Inc.

"The amount of Trinity Motor Truck Company's invoice will be paid in cash upon completion of the repairs necessary.

"Very truly yours

"TMG Truck Service, Inc.
"By: R. E. Green, President.

"Subscribed and sworn to before me this 8th day of March, 1954.

Frida K. Acker

"(Seal)          "Notary Public in and for Dallas County, Texas."

---

The motion was overruled and cause submitted to the jury on two issues to which the jury found in substance (1) TMG agreed to pay Petty the cost of repairing the truck and (2) the reasonable cost of repairing the truck was $2,722.22 plus interest. After the verdict was rendered TMG made a motion for judgment n. o. v. based on allegations that the trial court should have sustained its motion for instructed verdict and entered judgment for it because Petty failed to plead a cause of action against TMG that would entitle him to recover on the March 8, 1954 settlement agreement and since he sued for breach of contract, not in tort, it was incumbent upon him to allege compliance with the contract which he did not do; that the petition did not attempt to recover replacement cost of the motor or for repair of the motor or allege that he had repaired the motor and did not allege TMG agreed to pay for cost of installing the new motor that he alleged two separate contracts, one to pay the cost of repair of the motor and one to pay cost of repair of the truck with no pleading of such cause in the alternative. That he did not

allege a contract of compromise and settlement of the claim for damages and he could not therefore recover damages based on the contract that the measure of damages for repair of the motor and one for repair of the truck are different. That after hearing the motion the court overruled it and entered judgment on the findings of the jury and the implied findings in support thereof. This appeal was thereafter duly perfected, appellant TMG here briefing eighteen points of error.

Points 1 to 6 inclusive will be considered together. They assert in substance error in overruling TMG's motion for instructed verdict, motion for judgment n. o. v., and his amended motion for new trial because (1) Petty did not plead a cause of action entitling him to recover in contract for breach of an alleged compromise of his alleged damage "since he pled a written offer" (the March 8, 1954 instrument above set out) since he alleges an agreement to pay only the cost of necessary repairs to Motor No. 4A–7128 and also pled an unconditional acceptance of such agreement and failed to allege his compliance with said agreement's terms for a breach thereof by TMG or any right that would entitle him to recover on contract; failed to allege cost of repair of the motor but sought recovery of the usual charges for repairs that would restore the truck tractor to as good condition as prior to the damage amounting to $2,822.22 which he alleged TMG refused to pay and there were no pleadings to sustain issue No. 1. (2) In overruling his motion for instructed verdict, his motion for judgment n. o. v., and for a new trial for the same reasons as given in the first point and that he could not recover for a motor. (3) Petty failed to plead or prove special issue No. 1 and issue 1 is not supported by pleadings or proof or alternative pleadings. (4) The motion for judgment n. o. v. because issue 1 and the answer thereto were not based on any fact but on an assumption by Petty that the agreement to repair a motor in a truck was in effect an agreement to repair a truck which was a subterfuge attempt to conceal his failure to comply with the terms of the written contract and to recover the price of the motor which was not provided for in the written contract. (5) Because it was admitted by all parties that Petty and TMG entered into the written contract which provided that TMG agreed to pay the cost of repair of Motor 4A–7128 and the jury's answer that TMG agreed to pay the cost of repairing the truck "was an attempt by plaintiffs to vary the written contract" and (6) the verdict and judgment had no support in evidence and an instructed verdict for TMG would have been proper.

The court's charge to the jury was submitted to the attorneys by the court before it was read to the jury and issue 1 was objected to in substance because (1) there was no pleading to support it; (2) exhibit 1 shows that TMG agreed to pay cost of repair of motor No. 4A–7128 and (3) any finding on issue would be contrary to the terms set out in exhibit 1; (4) Petty did not allege the terms of the contract were ambiguous, incomplete or obtained by mutual mistake, accident or fraud, therefore issue 1 would vary the terms of the written instrument; (5) any finding to issue 1 would be a finding that exhibit 1 dated March 8, quoted above, was not made and the undisputed evidence shows that it was and (6) exhibit 1 was introduced in evidence by Petty and general allegations inconsistent with special allegations were subordinate to the specific allegations in any other theory of the case.

The March 8, 1954 contract must be construed in the light of all surrounding circumstances. The agreement is signed and executed in the name of TMG by Green, its President, and by Petty of TMG it will be noticed that the word "as" was not placed between the wording "Roy C. Green" and "President of". However we are of the opinion that from the instrument as a whole the proper construction to be given to the contract in order to effect the intention of the parties from the instru-

**146**

ment as a whole and the record here shows an agreement is specific, plain and obligates TMG to pay Petty on specific obligation, to-wit, the cost of repairing the Diesel engine on GMC truck Model 1950 KDCR–750 serial No. 136, Motor No. 4A–7128, belonging to Petty, as a result of damages caused while TMG was operating it.

The contract was signed by TMG by Green as President and agrees that TMG will pay upon completion of repairs to the Diesel engine belonging to Petty the cost of repairing the damage.

■ TMG did not go over the truck and repair the several parts of the engine, but decided to and did replace the old engine with a new one, giving as a reason that the new motor cost no more than the manual repairing and the several new parts of the old motor and the only question is whether such replacement of the motor was a repair of the truck's motor or engine within the meaning of the agreement here. There is no dispute that the engine was a part of the truck and its replacement was a repair of the truck. This suit is not for the cost of repair to the truck but is for cost of repair of the engine. As contended by TMG we cannot re-write the contract for the parties, but we can construe the contract in evidence from its four corners. It does, in our opinion, cover the repairing of the engine on the truck, to wit, the Diesel motor No. 4A–7128, and such repairs were a repair of a part of the truck, therefore a repair of the truck, under the evidence here.

Point 1 asserts a lack of pleading. The March 8 agreement was pled in full; the nature of repairs was pled and the amount necessary to repair the motor was pled. These repairs were not made but a new motor installed. The cost of which would be the same in either instance.

. The measure of damage which was used here was a proper measure. TMG was not required, nor did he, suffer loss by Petty's using the amount of the reasonable cost of repairs to buy a new motor which cost him the same amount. The error, if any, was harmless to TMG. Point 1 is overruled.

Point 2 asserts error in overruling the motions for (1) instructed verdict, (2) judgment n. o. v., (3) for new trial. The same reasons given in point 1 apply here. The amount awarded by the jury, $2,722.22, was less than the estimated cost of repairs. The error, if any, was harmless. Rules 434 and 503, Texas Rules of Civil Procedure, and cases cited thereunder. Point 2 is overruled.

■ Point 3 asserts Petty failed to plead that there was evidence that the cost of repairs would amount to $2,822.22. The agreement of March 8 signed by TMG provided that Trinity Motor Company's invoice would be paid in cash upon completion of the repairs, although the repairs were not made. The above record shows the reasonable cost would have been $100 in excess of the cost of the new motor. Cost of repairs is one of the measures of damages applicable to this case. 29 Texas Law Review 103 and cases there cited. No material reversible error is shown by point 3. It is overruled.

Point 4 asserts error in assessing the damage at the cost of a new motor on the agreement to pay the cost of repairs as shown under our discussion of point 3. This point did not disclose damage to appellant, and, if error, was harmless. Point 4 is overruled.

Point 5 asserts error in overruling his objections to issue 1 because it was an attempt to vary the written contract. The cost of repairs as stated above is one of the measures of damages applicable here. The error, if any, was harmless. Point 5 is overruled.

■ Point 6 asserts the verdict is not supported in pleading or evidence. Petty pled the agreement of March 8 in which

TMG agreed to pay Petty the cost of repairing the truck and the evidence shows the only part of the truck damaged was the motor which the jury found amounted to $2,822.22. Any error disclosed by this point is harmless. Point 6 is overruled.

Points 7, 8, 9 and 10 are briefed together and assert (7) failure to submit any issue on whether or not the truck was repaired; (8) it could not be presumed the truck was repaired; (9) none of the controverted issues raised by the pleadings and the evidence were submitted to the jury hence appellee did not prove a case even under the theory as shown by the pleadings and proof; and (10) issue 1 was without effect absent a finding whether or not the truck was repaired.

Appellant's points do not show the issues not submitted were properly requested or requested at all, and there is no showing in the record that all parties and the jury did not know the lawsuit concerned only the engine on the truck and any error in the manner of submission under such record was harmless. Points 7 to 10 inclusive are overruled.

Point 11 asserts error in overruling special exception 5 which attacked the allegation in Petty's petition that to restore the truck to its condition before the damage thereto was the sum of $2,722.22 because it was not alleged TMG agreed to pay the cost to restore the truck to the same condition as before the collision. No damage was suffered to the truck except that to the motor and the only evidence of damage to the truck was to the motor. The issue submitted was technically incorrect but under the record was harmless as to TMG. Point 11 is overruled.

Point 12 asserts error in the overruling of his objection to exhibit 2, the bill Petty testified he paid for the new motor.

A duplicate of the repair order of the Trinity Motor Truck Company was admitted in evidence showing numerous individual items and their separate cost or the charge therefor. Said items totaled $2,722.22. The bill was for the amount of the cost of the new motor, not for repairs to the one replaced, which he paid to get possession of the truck since there is no complaint as to the new motor either as to its value or its soundness and has been dealt with by the parties as of such value, no reversible error is shown by point 12. It is overruled.

Point 13 asserts error in overruling exceptions to exhibit A because it was not alleged that TMG agreed to pay for the same. Exhibit A was an itemized bill of parts and labor necessary for the repair work on motor 4A–7128 totaling $2,722.22. Motor No. 4A–37128 was the number of the new motor which replaced the old motor. It was accepted in lieu of the cash damages. Any error in point 13 is harmless and point 13 is overruled.

Point 14 asserts error in overruling objections to testimony of the witness as to whether or not motor 4A–7128 was repairable because it was not a condition of the written contract, therefore immaterial. The court overruled the objection above set out and permitted Petty to testify that because of the condition of motor No. 4A–7128 he was entitled to recover for a new motor which harmed appellant in that the evidence, although not a proper measure of damages, was used by the jury as the basis of their verdict.

The evidence admitted over such objection was in substance:

"Q. Now, from the condition which you found in that engine, in that truck, state whether or not it could be repaired using the same basic engine? * * * A. No, the motor was—it wasn't in a repairable condition. * * * "Q. Then what was done, Mr. Farris, to the truck? A. We notified Mr. Petty that the engine was in no condition to be repaired, and that a new engine would have to be put in the truck. "Q.

All right, sir. Did you install a new basic engine? A. We did. * * *

"Q. Now, were there certain attachments such as generators and starters and what not, that goes on a motor, that were removed from the old one and put on the new one? A. Yes, sir.

"Q. Do you recall what these attachments might have been in particular? A. I believe there were only three accessories used off of the old engine, one of them being the generator, and one being the starter, and then, of course, the air cleaner and blower here which is of a minor item. * * *

"Q. Mr. Farris, these parts which were frozen, the crank shaft and so forth, would it have been possible to have assembled the component parts of an engine and install them, rather than putting in a new basic engine?"

Further that he could have started with a new block, new crank shaft, new pistons, liners and all new parts and built a brand new engine from the parts inventory but that would cost in the neighborhood of $2,300 or $2,400 plus installation costs. The mileage of that type motor with usual care and treatment, maintenance and service recommended by General Motors and numerous companies here in Dallas are getting 350,000 to 400,000 miles without pulling the engine out of the frame for complete overhauling. He knows of engines such as this one to operate with an overhaul for as much as a million miles. Prior to March 8 the truck Petty owned was in relatively good condition; he had the old motor turned in for junk; it could not be replaced.

Under the above record there is no reversible error shown and, if there was, it was harmless, since the cost of the new motor was less than the cost of repairs. Point 14 is overruled.

Point 15 asserts error in overruling his special exceptions to Petty's petition as to what Petty said was contemplated at the time of the making and acceptance of the March 8 agreement since it is an attempt to materially change and wholly defeat the issue of the written agreement without alleging the contract was ambiguous or procured by mistake, accident or fraud by parol evidence.

Since the measure of damages did not have to be pled and can be based on other evidence and a proper measure having been submitted, there is no error in point 15. It is overruled.

Point 16 asserts error in overruling objection to issue No. 2 because it was too general and speculative. The objection was that to permit any finding under special issue No. 2 would in effect be an attempt to have the jury return a general verdict and judgment on the cost of repairing all parts of the truck and is too general and does not specify what parts are covered by such cost of repairing. As we have above stated, the only part of the truck involved was the engine and the only evidence was as to repairs to the engine. Any error therefore in the submission of issue No. 2 was harmless. Point 16 is overruled.

Point 17 asserts error in submitting over objection the reasonable cost of repairing the truck since it was not a proper measure of damages. What we have stated above is applicable here. Point 17 is overruled.

Point 18 asserts error in substance in issue 2 that TMG had failed to prove cost of repairing the truck. The case was tried on the theory that only the motor was involved; no other part of the truck. The error if any was harmless. Point 18 is overruled.

Finding no reversible error in appellant's points, the judgment of the trial court is

Affirmed.